## COMMONWEALTH vs. ROBERT SMITH.

No. 97-P-1697.

Plymouth. April 8, 1998. - May 25, 1999.

Present: KASS, SMITH, & JACOBS, JJ.

Further appellate review granted, 430 Mass. 1104 (1999).

*Incest. Rape. Statute,* Construction. *Words,* "Sexual intercourse."

This court concluded that the term "sexual intercourse" in the incest statute, G. L. c. 272, § 17, encompasses only the penetration of the female sex organ by the male sex organ, with or without emission. [823-826]

Where there was no evidence before a grand jury that a defendant had inserted his penis into his daughter's vagina, the judge correctly allowed the defendant's motion to dismiss the indictments returned that alleged incest. [826]

INDICTMENTS found and returned in the Superior Court Department on April 11, 1996.

A motion to dismiss was heard by *John A. Tierney, J.*

*Jeanne L. Holmes,* Assistant District Attorney *(Robert C. Thompson,* Assistant District Attorney, with her) for the Commonwealth.

*J. Russell Hodgdon,* for the defendant, submitted a brief.

SMITH, J. A Plymouth County grand jury returned two indictments against the defendant, Robert Smith, charging him with incest pursuant to G. L. c. 272, § 17.[1] He was also indicted for indecent assault and battery on a child under the age of fourteen, and assault and battery. The charges arose as a result of certain allegations made by his daughter Nora (a pseudonym).

Prior to trial, the defendant filed a motion to dismiss the incest indictments on the ground that the grand jury did not receive sufficient evidence to find probable cause in regard to

---

[1]General Laws c. 272, § 17, states in relevant part as follows: "Persons within the degrees of consanguinity within which marriages are prohibited or declared by law to be incestuous and void, who intermarry or have sexual intercourse with each other, shall be punished . . . ."

those crimes. In particular, the defendant argued that the term "sexual intercourse" appearing in the statute requires the Commonwealth to produce evidence before the grand jury that he had penetrated Nora's vagina with his penis. Because there was no such evidence, the defendant claimed that the incest indictments should be dismissed.

A hearing on the motion was held before a Superior Court judge. It was undisputed that Nora had testified before the grand jury that the defendant, who was her father, had fondled her in an inappropriate manner after she was eleven years old, and that after she reached the age of sixteen, the defendant had inserted his finger into her vagina and also had her perform oral sex on him. There was no evidence that the defendant had ever inserted his penis into her vagina.

Based on Nora's testimony, the Commonwealth argued that digital penetration of Nora's vagina and oral intercourse constituted sexual intercourse under the statute and, therefore, the grand jury had heard "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the defendant had committed or was committing an offense." *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), quoting from *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972) (other citation omitted).

The judge ruled, however, that digital penetration and oral intercourse did not constitute "sexual intercourse" as required by the incest statute. Therefore, because there was no evidence before the grand jury that the defendant had inserted his penis into his daughter's vagina, the judge allowed the defendant's motion and dismissed the incest indictments. The Commonwealth appealed.

The Legislature never explicitly defined the meaning of the term "sexual intercourse" found in the incest statute. Further, Massachusetts case law has not addressed the question of which types of sexual conduct are forbidden by that statute.[2] In order

---

[2]In *Commonwealth* v. *Domaingue*, 397 Mass. 693, 704 n.6 (1986), the court held that there was sufficient evidence to withstand a motion for a required finding of not guilty when, although the victim testified generally about "having sex" with her father, she also testified that "he put his penis into my vagina." In *Commonwealth* v. *Taylor*, 319 Mass. 631, 633 (1946), the court held that evidence that the defendant had penetrated his daughter's vagina with his penis was sufficient to withstand a motion for a required finding of

to ascertain the Legislature's intention, we turn to G. L. c. 265, § 22 (the rape statute), to determine how the term "sexual intercourse," appearing in that statute, has been defined by the court.

Historically, the crime of rape was defined as the "ravishing and carnal knowledge" of a female by force and against her will. See St. 1893, c. 466, § 1; R. L. 1902, c. 207, § 22. In 1974, however, the Legislature amended G. L. c. 265, § 22. See St. 1974, c. 474, § 1. Among other things, the term "ravishing and carnal knowledge" was replaced with the term "sexual intercourse," and the crime of rape was amended to include both "sexual intercourse or unnatural sexual intercourse."[3] The Legislature did not amend the incest statute.

In *Commonwealth* v. *Gallant*, 373 Mass. 577 (1977), the court discussed the 1974 amendments to G. L. c. 265, § 22, and other related statutes. The court noted that the Legislature replaced "[t]he archaic terminology of 'ravishing' and 'carnal knowledge' . . . by the more contemporary 'sexual intercourse'. . . [and] [b]y sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission." *Id.* at 584. Further, the court defined the term "unnatural sexual intercourse" to include "oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Ibid.*

The addition by the Legislature of the term "unnatural sexual intercourse" to the rape and related statutes is of considerable significance in our analysis. If the Legislature had intended that the term "sexual intercourse" in the rape statute was to include such acts as fellatio or digital penetration of the vagina — acts which the defendant allegedly committed in this matter — it would have been unnecessary for the Legislature to broaden the scope of rape and similar crimes to include a separate category of acts deemed "unnatural sexual intercourse."

---

not guilty of the crime of incest.

However, neither case is helpful in determining whether digital penetration and oral intercourse, by themselves, are sufficient to constitute "sexual intercourse" under the incest statute.

[3]At the same time that the Legislature amended G. L. c. 265, § 22, it also amended G. L. c. 265, § 22A (forcible rape of a minor), see St. 1974, c. 474, § 2, and G. L. c. 265, § 23 (statutory rape), see St. 1974, c. 474, § 3, to include both "sexual intercourse or unnatural intercourse."

Further, "[t]he Legislature must be assumed to know the preexisting law and the decisions of [the Supreme Judicial C]ourt." *Gillette Co.* v. *Commissioner of Rev.*, 425 Mass. 670, 677 (1997), quoting from *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 313 (1949). For decades, the Supreme Judicial Court had defined the term "sexual intercourse" to mean the penetration of a woman's vagina by the male penis. See *Commonwealth* v. *Hussey*, 157 Mass. 415, 416 (1892); *Commonwealth* v. *Gallant*, *supra* at 584, and cases cited.[4] In view of the court's definition of sexual intercourse in the *Gallant* decision, coupled with the Legislature's decision not to amend the incest statute,[5] we conclude that the term "sexual intercourse" in the incest statute encompasses only "the penetration of the female sex organ by the male sex organ, with or without emission." *Commonwealth* v. *Gallant*, *supra.*

The Commonwealth urges us to follow *Commonwealth* v. *Fouse*, 417 Pa. Super. 534 (1992). The Pennsylvania incest statute prohibited sexual intercourse with an ancestor or descendent. The statute did not define "sexual intercourse" and the defendant in *Fouse* argued that its meaning did not extend to his alleged acts of anal intercourse with his son. The court, however, applied the definition of "sexual intercourse" which was contained in a different statute. That definition defined "sexual intercourse" to include not only traditional acts of intercourse, but also oral and anal intercourse.

---

[4]The Commonwealth urges us to adopt the definition of "sexual intercourse" found in Webster's Ninth New Collegiate Dictionary 1079 (1983), which states, inter alia, that sexual intercourse "involve[s] genital contact between individuals other than penetration of the vagina by the penis." Webster's Third New Intl. Dictionary 2082 (1993), however, gives as its first choice the following definition of "sexual intercourse": "heterosexual intercourse involving penetration of the vagina by the penis."

Dictionary definitions are helpful but not dispositive in statutory interpretation cases, see *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984). Here, however, we have a clear, concise definition of "sexual intercourse" by the court in the *Gallant* decision, and we need not consider dictionary definitions.

[5]We do not suggest that the omission of the Legislature to amend the statute was necessarily inadvertent. The Legislature was undoubtedly aware that one of the important reasons for punishing incest is to prevent biological or genetic mutations which might occur in children born from such conduct. See 42 C.J.S. Incest § 2(b) (1991). Obviously, a child could not be conceived by digital penetration or oral intercourse. Therefore such sexual conduct would not frustrate one of the purposes of the enactment of the incest statute.

Further, the Legislature might have thought that misconduct of the type here would be punished by other criminal statutes.

We do not follow *Fouse* because the language and structure of our statutes mandate a different result. Unlike the Pennsylvania legislative scheme, our statutes explicitly define some sexual offenses such as rape, rape of a child, and statutory rape to include both "sexual misconduct" and "unnatural sexual intercourse" while defining the crime of incest as merely involving "sexual intercourse." It is that distinction which leads us to the conclusion that the term "sexual intercourse" does not encompass the defendant's alleged acts.

Finally, the Commonwealth argues that because the defendant's alleged conduct is so shocking and abhorrent, we should extend the definition of "sexual intercourse" to include such conduct. Of course, the defendant's conduct, if true, is shocking and abhorrent. However, "[t]he scope of the authority of [an appellate] court to interpret and apply statutes is limited by its constitutional role as a judicial, rather than a legislative, body. See art. 30 of the Massachusetts Declaration of Rights." *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997). We have no right to read into the incest statute "a provision which the Legislature did not see fit to put there . . . ." *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). To do so would amount to judicial legislation, which is forbidden by art. 30 of the Massachusetts Declaration of Rights. See Justice Qua's comments in *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 548 (1945). See *Pierce* v. *Christmas Tree Shops, Inc.*, 429 Mass. 91, 93 (1999).

In sum, because there was no evidence before the grand jury that the defendant had inserted his penis into his daughter's vagina, the judge did not commit error in dismissing the incest indictments.

> *Order allowing motion to dismiss indictments affirmed.*