COMMONWEALTH *vs.* ROBERT SMITH.

Plymouth. January 3, 2000. - May 11, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Practice, Criminal,* Indictment, Dismissal. *Incest. Rape. Statute,* Construction. *Words,* "Sexual intercourse."

This court concluded that, in light of legislative amendments of statutes in G. L. c. 272 containing the term "sexual intercourse" and the addition of the term "unnatural sexual intercourse" to G. L. c. 272, § 3, the meaning of the term "sexual intercourse" in G. L. c. 272, § 17, was limited to penile-vaginal penetration. [419-424] COWIN, J., concurring. IRELAND, J., dissenting.

Indictments alleging incest, G. L. c. 272, § 17, were correctly dismissed where there was no evidence of penile-vaginal penetration. [424-425] COWIN, J., concurring. IRELAND, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on April 11, 1996.

A motion to dismiss was heard by *John A. Tierney,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jeanne L. Holmes,* Assistant District Attorney, for the Commonwealth.

*J. Russell Hodgdon* for the defendant.

LYNCH, J. A Plymouth County grand jury indicted the defendant on two charges of incest pursuant to G. L. c. 272, § 17 (incest statute), based on conduct he allegedly engaged in with his daughter.[1] The defendant moved in the Superior Court,

---

[1] The defendant was also indicted for indecent assault and battery on a child under the age of fourteen years, G. L. c. 265, § 13B, and assault and battery, G. L. c. 265, § 13A, for acts allegedly perpetrated against his daughter. Neither of these indictments is before us on appeal. The defendant was not indicted for rape or statutory rape. The alleged acts of intercourse occurred after the victim had reached the age of sixteen years, thus precluding statutory rape charges. See G. L. c. 265, § 23. Moreover, at oral argument, the Commonwealth explained that no indictment was sought for rape, G. L. c. 265,

pursuant to Mass. R. Crim. P. 13 (c), 378 Mass. 871 (1979), to dismiss the indictments, arguing that, because there was no evidence of penile-vaginal penetration, the grand jury lacked sufficient evidence that he had engaged in "sexual intercourse" with his daughter, as required by the incest statute.[2] The judge allowed this motion to dismiss, and the Appeals Court affirmed, on the ground asserted by the defendant. See *Commonwealth* v. *Smith*, 46 Mass. App. Ct. 822, 826 (1999). We granted the Commonwealth's application for further appellate review. We now affirm the judgment of the Superior Court, although on reasoning different from that relied on by the Appeals Court.

1. *Facts and prior proceedings.* The charges against the defendant arose from allegations made by his daughter. The Commonwealth presented the grand jury with testimony of the daughter, her boy friend, and State Trooper Leonard C. Coppenrath, to whom the daughter had reported the defendant's conduct. The daughter testified, in relevant part, that the defendant had fondled her in an inappropriate manner after she was eleven years old and that, after she reached the age of sixteen years, he put his hands down her pants and digitally penetrated her vagina and also had her perform oral sex on him. Her boy friend testified that the daughter reported to him her father's sexual conduct toward her, in particular the acts of oral sex. The State trooper testified that the defendant, while admitting that he had rubbed sports cream on his daughter's chest, denied having any further sexual contact with her.

In allowing the defendant's motion to dismiss the incest indictments, the judge concluded that the alleged acts of digital penetration and oral intercourse did not satisfy the requirement in G. L. c. 272, § 17, of "sexual intercourse" between consanguineous relations. In the absence of a definition of "sexual intercourse" in the incest statute, the judge relied on this court's construction of this term, and of the related term "unnatural sexual intercourse," in the context of the rape statutes, G. L. c. 265, §§ 22, 22A, 23. In *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977), construing these terms

§ 22, because there was insufficient evidence of the daughter's lack of consent to the alleged acts of intercourse.

[2]General Laws c. 272, § 17, provides, in pertinent part: "Persons within the degrees of consanguinity within which marriages are prohibited or declared by law to be incestuous and void, who intermarry or have sexual intercourse, shall be punished . . . ."

within G. L. c. 265, § 22, this court concluded that, "[b]y sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission," whereas "unnatural sexual intercourse," by contrast, refers to "oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." Because the incest statute explicitly criminalizes "sexual intercourse" but not "unnatural sexual intercourse" between consanguineous relations, the judge concluded that the defendant's alleged conduct with his daughter did not warrant a finding of probable cause that the defendant had committed the statutory crime of incest and, therefore, dismissed the indictments. A panel of the Appeals Court affirmed, for substantially the same reasons. See *Commonwealth* v. *Smith, supra* at 823-824.

2. *Discussion.* In reviewing a judge's pretrial decision to dismiss indictments against a defendant, we must determine whether the evidence supported the judge's factual findings and whether the findings warranted his rulings of law. See *Commonwealth* v. *Aponte,* 391 Mass. 494, 504 (1984). The Legislature has not explicitly defined the term "sexual intercourse" in G. L. c. 272, § 17, and in prior cases brought under the statute we have not been required to determine whether this term extends to forms of sexual conduct other than penile-vaginal penetration.[3] We conclude that, but for the Legislature's post-1974 amendments of statutes in G. L. c. 272 that contain the term "sexual intercourse" and its addition of the term "unnatural sexual intercourse" to G. L. c. 272, § 3, the term "sexual intercourse" in the incest statute, G. L. c. 272, § 17, could properly be construed to encompass the acts here alleged to have been engaged in by the defendant with his daughter. However, in light of that legislative activity, we are compelled to limit the meaning of "sexual intercourse" in G. L. c. 272, § 17, to penile-vaginal penetration, with or without

---

[3]In *Commonwealth* v. *Lynes,* 142 Mass. 577, 581 (1886), this court held that "carnal knowledge and penetration were necessary" to prove the statutory crime of incest, but did not define the scope of the former term. In *Commonwealth* v. *Domaingue,* 397 Mass. 693, 704 n.6 (1986), and *Commonwealth* v. *Taylor,* 319 Mass. 631, 633 (1946), this court held that there was sufficient evidence to withstand a motion for a required finding of not guilty on the charge of incest where, in each case, there was evidence that the defendant had penetrated his daughter's vagina with his penis.

emission, and to conclude that the incest indictments against the defendant were properly dismissed.

In our view, it is too facile to rely directly, as did the Superior Court judge and the Appeals Court, on the rape statutes, G. L. c. 265, §§ 22, 22A, 23, for the meaning of "sexual intercourse" in the incest statute. When interpreting undefined terms in a statute, it is certainly permissible to draw on the meaning that has settled on the same language in other legislation. See *Commonwealth* v. *Gustafsson*, 370 Mass. 181, 187 (1976). However, such an interpretive approach is more properly utilized when the legislation that the court consults for guidance is in pari materia with the statute being construed, that is, when the two statutes relate to the same class of persons or things or share a common purpose. Compare 2B N.J. Singer, Sutherland Statutory Construction §§ 51.01-51.03 (5th ed. 1992), with §§ 53.03, 53.05. When the two statutes are not so related, this approach is, at best, an uncertain means of discerning the intended meaning of statutory language and should be employed cautiously. See *id.* at § 53.05. The rape statutes appear in a chapter entitled "Crimes Against the Person," G. L. c. 265, whereas the incest statute appears in a chapter entitled "Crimes Against Chastity, Morality, Decency and Good Order."[4] G. L. c. 272. Rape is a violent invasion of personal integrity and dignity committed in a sexual manner, an essential element of which is the absence of the victim's consent. See G. L. c. 265, §§ 22, 22A. In the case of rape of a child under the age of sixteen years committed without the use of force or threat, such lack of consent is, nevertheless, conclusively presumed by law. See G. L. c. 265, § 23; *Commonwealth* v. *Dunne*, 394 Mass. 10, 19 (1985), citing *Commonwealth* v. *Roosnell*, 143 Mass. 32, 36 (1886). By contrast, the crime of incest is committed where persons within a specified "degree[ ] of consanguinity" engage in sexual intercourse; the consensual or nonconsensual character of the conduct is immaterial. See G. L. c. 272, § 17. Cf. *Commonwealth* v. *Domaingue*, 397 Mass. 693, 703 (1986). Moreover, in *Commonwealth* v. *Gallant*, 373 Mass. 577, 583-585, 587-588 & n.13, 590 n.17 (1977), where "sexual intercourse" in G. L. c. 265, § 22, as appearing in St. 1974, c. 474, § 1, was held to

---

[4]We are aware that in *Commonwealth* v. *Gallant*, 373 Mass. 577, 585 (1977), in construing the term "unnatural sexual intercourse" in G. L. c. 265, § 23, this court looked for guidance to G. L. c. 272, §§ 34, 35, 35A, considering these "[r]elated statutes."

refer to penile-vaginal penetration, this court noted that the Legislature's 1974 amendment of the rape statutes to encompass also "unnatural sexual intercourse" reflected a nationwide reform effort that explicitly sought to "broaden the scope of the crime" to include forms of sexual intrusion that had escaped prosecution as rape under a narrower definition of intercourse. *Id.* at 588. Our construction of these terms in *Gallant* was thus influenced by the history of legislative activity specifically aimed at redefining and modernizing the crime of rape. All of this warrants the conclusion that the rape statutes are not in pari materia with the incest statute and that the meaning attributed to "sexual intercourse" in the context of rape would be inconclusive as to its meaning in the context of incest, absent an indication that the Legislature intended this same meaning to apply to statutes defining and proscribing "crimes against chastity, morality, decency and good order."

In the absence of such an indication, a better interpretive approach would have implemented the following two canons of statutory interpretation: first, "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated," *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975); and second, "the statutory language itself is the principal source of insight into the legislative purpose." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds, supra,* citing *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Limiting "sexual intercourse" in G. L. c. 272, § 17, to penile-vaginal penetration would be appropriate if the sole purpose of the incest prohibition were the prevention of genetic or biological abnormalities in the offspring of incestuous unions. See, e.g., *Commonwealth* v. *Smith*, 46 Mass. App. Ct. 822, 825 n.5 (1999). However, the plain language of the incest statute indicates that its drafters sought to advance purposes different from, and more

compelling than, eugenics.[5] For the statute does not define the crime of incest exclusively in terms of sexual intercourse between consanguineous relations, but also criminalizes the intermarriage of persons so related. See G. L. c. 272, § 17. Moreover, the "[p]ersons within the degrees of consanguinity" to whom the statute's prohibitions of intermarriage and sexual intercourse apply are not limited to blood relations, but include also certain affinal kin as well as stepparents. Compare G. L. c. 272, § 17, with G. L. c. 207, §§ 1, 2. The Legislature's purpose in criminalizing incestuous conduct must thus extend beyond the prevention of genetic defects, as this goal would clearly not be advanced by criminalizing marriage itself, without more, between blood relations, and still less by prohibiting coitus between affinal kin who do not share a common bloodline. See Model Penal Code and Commentaries § 230.2 comment 2(b), at 403; comment 3(b), at 412-413 (1980). Indeed, the scope of the incest statute, as it relates to both conduct and persons, strongly suggests that its framers valued and sought to promote the sanctity and integrity of familial relationships, as well as to protect children within the family from sexual impositions by their elders. See, e.g., *id.* at § 230.2, comment 2(c)-(e), at 405-407, and authorities cited; *Commonwealth* v. *Fouse*, 417 Pa. Super. 534, 538 (1992). Accordingly, were there no other relevant legislative pronouncement, we would conclude that the term "sexual intercourse" in the incest statute, interpreted so as to realize all of the statute's purposes, is not properly limited to heterosexual coitus — a restrictive definition consistent only with a debatable eugenics rationale — but instead should be construed according to the term's ordinary and approved usage, which includes "intercourse involving genital contact between individuals other than penetration of the vagina by the penis." Webster's New Collegiate Dictionary 1055 (1980 ed.). See, e.g., *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct. 59, 66, cert. denied sub nom. *Bucuvalas* v. *Massachusetts*, 439 U.S. 827

---

[5]And with good reason, because the concern for genetic purity appears to be the least probable explanation and justification for the incest prohibition. See, e.g., Model Penal Code and Commentaries § 230.2 comment 2(b), at 402-405 (1980); Bienen, Defining Incest, 92 Nw. U. L. Rev. 1501, 1531, 1537 (1998); Bailey, The Punishment of Incest Act 1908: A Case Study of Law Creation, 1979 Crim. L.R. 708, 715-718; Hughes, The Crime of Incest, 55 J. Crim. L. & Criminology 322, 326-330 (1964), and authorities cited; E. Durkheim, Incest: The Nature and Origin of the Taboo 60-65, 98-103 (E. Sagarin trans., 1963).

(1978); *Commonwealth* v. *Fouse, supra*; *State* v. *Butters*, 527 So. 2d 1023, 1026-1027 (La. Ct. App. 1988). Significantly, this broad construction of "sexual intercourse" in the context of incest is recommended by the drafters of the Model Penal Code.[6]

That having been said, however, statutory amendments to G. L. c. 272, the same chapter of the General Laws as the incest statute, that contain the term "sexual intercourse" compel us to construe this term in G. L. c. 272, § 17, more narrowly than would otherwise be the case. The term "sexual intercourse" also appears in §§ 2, 3, 4, 6, and 14 of G. L. c. 272.[7] Since its 1974 amendment of the rape statutes, G. L. c. 265, §§ 22, 22A,

---

[6]The Model Penal Code's incest statute, like G. L. c. 272, § 17, criminalizes "sexual intercourse" (along with intermarriage and cohabitation) among specified relations who are not limited to blood relatives. See Model Penal Code and Commentaries, § 230.2, at 397 (1980). The drafters' comments with respect to the intended meaning of "sexual intercourse" in this context are instructive and directly relevant to this case:

"To the extent that incest is based on a genetic rationale, it is clear that only normal vaginal intercourse between male and female should be prevented. The other objectives of the law, however, point to a broader concept. For example, the preservation of family unity can be disrupted as much by a father who engages in intercourse per os or per anum with his daughter or his son as by a father who engages in vaginal intercourse with his daughter. Imposition by a dominant parent upon an adopted child has a similar destructive effect independent of the form the intercourse might take. It would seem, therefore, that a strong case could be made for including all forms of intercourse within the incest prohibition, and such is the intent of the Model Code." *Id.* at § 230.2 comment 4, at 418.

The drafters of the Model Penal Code were, admittedly, influenced partly by their having defined "sexual intercourse" in their rape statute to include penetration per os and per anum. See *id.* at 418 n.78, citing *id.* at § 213.0. However, the drafters go on to explain that the various noneugenic purposes served by the incest prohibition (e.g., family unity, reinforcement of community norms, protection of the young) suffice, independently of the rape statute's definition of "sexual intercourse," to warrant giving this term a "broad reading . . . in the context of incest." *Id.* at 418 n.78. See *Commonwealth* v. *Fouse*, 417 Pa. Super. 534, 538 (1992) (incest prohibition's purposes, viz., promoting solidarity of family and protecting young from sexual oppression by elders, furnish independent grounds, apart from broad definition of "sexual intercourse" in rape statute, for construing that same term in incest statute to encompass anal intercourse between father and sons).

[7]The term appears, additionally, in G. L. c. 272, § 31, where the term "[s]exual conduct" is defined to include, inter alia, "sexual intercourse, actual or simulated, normal or perverted." This definition, however, is expressly limited to G. L. c. 272, §§ 28, 28C-28E, 29A-29B, 30, 30D.

23, which substituted the terms "sexual intercourse" and "unnatural sexual intercourse" for the archaic "ravishes and carnally knows," see St. 1974, c. 474, §§ 1-3, and our decision construing these terms in *Commonwealth* v. *Gallant, supra,* the Legislature has amended G. L. c. 272, §§ 2, 6, 14, but has not expanded the scope of the proscribed offenses to include "unnatural sexual intercourse."[8] Moreover, the Legislature recently rewrote G. L. c. 272, § 3 (an act criminalizing the overpowering of another by means of an intoxicating substance for sexual purposes), substituting the terms "sexual intercourse or unnatural sexual intercourse" for the term "unlawful sexual intercourse." See St. 1998, c. 232, § 3. This same legislation rewrote G. L. c. 272, § 4, which criminalizes 'induc[ing] any person under 18 years of age of chaste life to have unlawful sexual intercourse," to revise the penalty provisions, but did not similarly expand the scope of this offense to include "unnatural sexual intercourse."

Assuming, as we must, that the Legislature, in enacting these various amendments, was aware of this court's prior construction of the terms "sexual intercourse" and "unnatural sexual intercourse," see *Gillette Co.* v. *Commissioner of Revenue,* 425 Mass. 670, 677 (1997), quoting *Selectmen of Topsfield* v. *State Racing Comm'n,* 324 Mass. 309, 313 (1949), we must infer from this legislative activity that it intends these terms to be similarly defined where they appear in G. L. c. 272.[9] Because statutes which relate to a common subject matter "should be construed together so as to constitute an harmonious whole," *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513-514 (1975), we interpret G. L. c. 272, § 17, in conjunction with other statutes in G. L. c. 272 that contain the term "sexual intercourse" (in particular G. L. c. 272, § 3, which also contains the term "unnatural sexual intercourse"), and conclude, regrettably, that the term "sexual intercourse" in the incest statute excludes such forms of sexual conduct as are encompassed by the term "unnatural sexual intercourse." As the conduct allegedly engaged in by the defendant with his daughter falls within the scope of the latter term, as we have construed it, the judge

---

[8]See G. L. c. 272, §§ 2, 3, as appearing in St. 1978, c. 379, § 4; G. L. c. 272, § 6, as appearing in St. 1978, c. 379, § 5, as appearing in St. 1979, · c. 472, and as amended by St. 1980, c. 409; G. L. c. 272, § 14, as appearing in St. 1978, c. 379, § 7.

[9]With the exception of G. L. c. 272, § 31. See note 7, *supra.*

did not err in allowing the defendant's motion to dismiss the incest indictments.[10] See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).

We acknowledge, as did the Superior Court judge and the Appeals Court, that the defendant's alleged conduct is shocking and abhorrent in nature. However, as the Appeals Court reasoned, "[w]e have no right to read into the incest statute 'a provision which the Legislature did not see fit to put there . . . .' " *Commonwealth* v. *Smith*, 46 Mass. App. Ct. 822, 826 (1999), quoting *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). While the result in this case undoubtedly offends both common sense and fundamental decency, it is an outcome that is compelled by the Legislature's choice of language in G. L. c. 272, coupled with the limits on this court's powers that flow from art. 30 of the Massachusetts Declaration of Rights. See *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997); *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780-781 (1977). Accordingly, if the statutory crime of incest is to encompass the conduct here alleged, it is incumbent on the Legislature to use the terms it has adopted to convey this purpose.

We affirm the order of the Superior Court judge allowing the motion to dismiss.

*So ordered.*

COWIN, J. (concurring). I agree with the court that the revisions of G. L. c. 272, §§ 3 and 4, as appearing in St. 1998, c. 232, § 3, are additional support for the proposition that G. L. c. 272, § 17, cannot be applied to the acts of the defendant. However, I also agree with the Appeals Court and the Superior Court that G. L. c. 272, § 17, even without the guidance of the 1998 amendments to G. L. c. 272, §§ 3 and 4, did not criminalize the acts in question. The Legislature has defined the terms "sexual intercourse" and "unnatural sexual intercourse" and does not normally use them interchangeably. We should not

---

[10]This conclusion comports with the maxim that criminal statutes are to be strictly construed and that any reasonable doubt as to a statute's meaning must be resolved in a defendant's favor. See *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991), citing *Commonwealth* v. *Connolly*, 394 Mass. 169, 174 (1985).

read into a criminal statute with significant penal consequences our view of what the Legislature should have done.

IRELAND, J. (dissenting). I write separately because I believe the court, while correctly acknowledging that the purpose of the incest statute is to "promote the sanctity and integrity of familial relationships, as well as to protect children within the family from sexual impositions," *ante* at 422, fails to interpret the statute to further those purposes. The court's overly narrow definition of "sexual intercourse" does not accord with a commonsense understanding of the term and leaves the children of the Commonwealth inadequately protected from sexual exploitation by relatives. I therefore respectfully dissent.

To begin, I agree that the court is not bound by its previous construction of the term "sexual intercourse," as used in the rape statutes, when construing the term as used in the incest statute. *Ante* at 420. I also agree that it is appropriate for the court to look to other statutes for interpretive guidance when those statutes are in pari materia. *Id.* I disagree though, that the Legislature, by enacting St. 1998, c. 232, which, in part, rewrote G. L. c. 272, § 3, intended to import the Court's construction of "sexual intercourse" in the context of the rape statutes, into all sections of c. 272. *Ante* at 424.

First, the title of the act and its provisions indicates that the legislative purpose was to address the issue of drug facilitated rape and kidnapping.[1] The statutes affected by the legislation seem to be no more in pari materia with the incest statutes than the other rape statutes. Although the court implies that the

[1]Statute 1998, c. 232, is entitled "An Act relative to the prevention of drug induced rape and kidnapping," and in addition to substituting "sexual intercourse or unnatural sexual intercourse" for "unlawful sexual intercourse" in G. L. c. 272, § 3, the act also substantially increased the penalty for violation of that statute, amended G. L. c. 94C, § 31, by adding three compounds to class A controlled substances, and created a new crime, G. L. c. 265, § 26B (drugging person for kidnapping).

The act also amended the punishment provision of G. L. c. 272, § 4 (inducing person under eighteen to have unlawful sexual intercourse), in order to keep the punishment for that crime the same as it had been before St. 1998, c. 232, was enacted. Prior to St. 1998, c. 232, G. L. c. 272, § 4, provided for punishment as stated in G. L. c. 272, § 3. Statute 1998, c. 232, significantly increased the penalty for violation of G. L. c. 272, § 3. Statute 1998, c. 232, also rewrote G. L. c. 272, § 4, such that the penalty for it remained the same, after the penalty for G. L. c. 272, § 3, was increased.

statutes amended by St. 1998, c. 232, and the incest statute relate "to a common subject matter," the court does not identify one, and seems to rest that conclusion on the mere fact that the statutes appear in the same chapter.

Furthermore, and more fundamentally, the court's interpretation fails to further all of the purposes served by the statute. The Legislature may choose to employ a term differently in two different statutes. See *United States* v. *Sawyer*, 878 F. Supp. 279, 284 (D. Mass. 1995), aff'd, 85 F.3d 713 (1st Cir. 1996) (same term may be employed differently in two different statutes, whether by mistake or intention). In each statute, the term should be construed to effectuate the purposes of that particular statute. The court acknowledges that the plain language of the incest statute indicates that it was intended to "advance purposes different from, *and more compelling* than, eugenics," including the promotion of the family unit and the protection of children (emphasis added). *Ante* at 421-422. The court also acknowledges that an interpretation of sexual intercourse limited only to "heterosexual coitus" is "a restrictive definition consistent only with a debatable eugenics rationale." *Ante* at 422. The court proceeds, however, to interpret the statute in such a way to cover only "heterosexual coitus." This result is in direct contravention to the fundamental principle of statutory interpretation, that is, the court should construe a statute in order to effectuate its purpose or purposes, see *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983); *ante* at 421; and disregards dictionary definitions of the term, *ante* at 422, on which we have traditionally relied to help us determine the ordinary and common usage of a word. See, e.g., *Commonwealth* v. *Campbell*, 415 Mass. 697, 700 (1990), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977); *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 551 (1991).[2]

Under the court's interpretation, a mother who had vaginal intercourse with her son would be committing incest, whereas a father who had anal intercourse with his son or his daughter would not be committing incest. As the Pennsylvania courts

---

[2]Also, under the court's reasoning, *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct. 59, 65, cert. denied sub nom. *Bucuvalas* v. *Massachusetts*, 439 U.S. 827 (1978), would be overruled. In that case, which interpreted G. L. c. 272, § 6, a statute prohibiting owners from allowing their premises to be used for "unlawfully having sexual intercourse for money," the term "sexual intercourse" was construed to include "a variety of sexual conduct, including the act of fellatio." *Id.*

have noted, such a result would be arbitrary, see *Commonwealth v. Fouse*, 417 Pa. Super. 534, 540 (1992), and we should not interpret the statute to lead to such an absurd result. See, e.g., *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996), quoting *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982).[3]

In sum, I dissent because the court's interpretation does not serve all of the purposes of the incest statute and thus is not consistent with the legislative intent, leads to an unfair and absurd result, fails adequately to protect the children of our Commonwealth from sexual abuse within their families, and, as the court itself acknowledges, "offends both common sense and fundamental decency." *Ante* at 425. I would urge the Legislature to act as quickly as possible to correct the situation created by the court's decision today.

---

[3]It is true that penal statutes are to be strictly construed. See, e.g., *Commonwealth* v. *Wotan*, 422 Mass. 740, 742-743 (1996). The purpose behind the rule of strict construction, however, is to put defendants properly on notice of what types of behavior are criminalized. See, e.g., *Commonwealth* v. *Adams*, 389 Mass. 265, 270 (1983). Here, the defendant should have understood that his alleged actions constituted the crime of incest.