## COMMONWEALTH vs. BARBARA A. CAMPBELL.

Franklin. March 1, 1993. - July 8, 1993.

Present: LIACOS. C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Fraud. Partnership*, What constitutes. *Uniform Partnership Act. Statute*, Construction.

At the trial of an indictment framed under G. L. c. 266, § 92, a statute that punishes the making of false reports of the financial condition of any "corporation, joint stock association, partnership or individual," the defendant, who was charged with presenting false financial reports of an unincorporated youth baseball league of which she was treasurer, was entitled to a required finding of not guilty on the ground that the league was not one of the entities covered by the statute. [699-702]

INDICTMENT found and returned in the Superior Court Department on September 15, 1989.

The case was tried before *Raymond R. Cross*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan M. Rubin*, Committee for Public Counsel Services, for the defendant.

*Nancy E. Sarokhan*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Barbara A. Campbell, was convicted of presenting false financial reports concerning the financial condition of the Greenfield Minor League (league), of which she was treasurer.[1] The league was a baseball

---

[1]Campbell was acquitted on two other counts charged in the indictment. Count II charged her with larceny from a voluntary association. G. L. c. 266, § 58 (1990 ed.). Count III charged her with larceny of property (money) of a value of more than $250. G. L. c. 266, § 30 (1990 ed.).

league for young boys.[2] The statute under which she was convicted, G. L. c. 266, § 92 (1990 ed.), subjects to criminal liability "[w]hoever wilfully and with intent to defraud makes or publishes, or causes or permits to be made or published in any way whatever, any book, prospectus, notice, report, statement, exhibit, advertisement or other publication of or concerning the affairs, financial condition, property or assets of any *corporation, joint stock association, partnership or individual* . . . (emphasis added)." G. L. c. 266, § 92. Campbell admits that she wilfully presented inaccurate financial reports on various occasions throughout her tenure, from 1980 to 1988. The sole question before us is whether the then unincorporated league fell within the ambit of c. 266, § 92, that is, whether it was a partnership.[3]

---

[2]The league was incorporated after the events giving rise to the indictments.

[3]The Commonwealth did not argue, and the trial judge did not instruct the jury, that the league qualified as a "corporation" or "joint stock association." Therefore, when the trial judge instructed the jury, he omitted the terms "corporation" and "joint stock association" from his reading of the statute, and retained the terms "partnership" and "individual."

His description of what may constitute a partnership is discussed more fully later in this opinion. He did not elaborate on the term "individual." The Commonwealth now attempts to argue that the league, as well as being a partnership, was an individual, and that the jury could have so found. The Commonwealth's argument is that the common dictionary definition of "individual" includes a person, and that G. L. c. 4, § 7 Twenty-third (1990 ed.), states that, " '[p]erson' . . . shall include corporations, societies, associations and partnerships." The Commonwealth's reasoning is not persuasive. Since the term "individual" is used in § 92, alongside the terms "corporation," "joint stock association," and "partnership," the Commonwealth's substitution of the c. 4, § 7 Twenty-third, definition of "[p]erson" for "individual" would result in § 92's being partially redundant because the definition the Commonwealth urges for "individual" would repeat some of the words already in § 92 explicitly. Such a view would add to § 92 the words "corporation, joint stock association, partnership or *corporation[ ], societ[y], association[ ]* and *partnership[ ]*" (emphasis supplied). We think it implausible that the Legislature intended such surplusage. See *International Org. of Masters, Mates & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984).

Moreover, the Commonwealth indicated clearly at trial that it was proceeding solely on the question of partnership. In opposing Campbell's motion for a required finding, the assistant district attorney stated: "Your

At the close of the Commonwealth's case, Campbell moved for a required finding of not guilty on the ground that the Commonwealth had failed to present any evidence that the league was one of the entities covered by § 92. The judge denied the motion. Campbell appealed and we transferred the case to this court on our own motion. We hold that the Commonwealth failed to present evidence that the league was a partnership (or any of the other entities covered by the statute), and therefore, that the motion for a required finding of not guilty ought to have been granted.

Our conclusion rests on the meaning of the word "partnership" in G. L. c. 266, § 92. We begin by reciting the well-settled principle that criminal statutes are to be strictly construed. See *Commonwealth* v. *Cintolo, ante* 358, 359 (1993); *Commonwealth* v. *Marrone,* 387 Mass. 702, 706 (1982), and cases cited. The Uniform Partnership Act, G. L. c. 108A (1990 ed.) (UPA), defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit." G. L. c. 108A, § 6 (1). The Commonwealth presented no evidence and makes no argument that the league satisfies this statutory definition. Additionally, the judge, in his instructions, affirmed that the jury "are considering an organization not carried on as a business for profit."

The Commonwealth argues that neither the UPA's definition of partnership nor the common law definition of partnership, developed prior to the adoption of the UPA, applies to G. L. c. 266, § 92.[4] Instead, the Commonwealth contends,

---

Honor, there is no question in my mind that if the Motion for Required Finding on the count is not to be allowed, that it will be on the basis that what we are dealing with is a partnership under the statute as its [*sic*] worded . . . ." At a sidebar conference after the judge had charged the jury, defense counsel noted his objection to the definition of partnership and the assistant district attorney stated: "May I make a suggestion at this juncture? And that is that rather than go through each of those kind of organizations, *that the Court direct the jury only to look at the partnership definition and to ignore the others?*"

[4]The UPA was enacted fifteen years subsequent to the enactment of G. L. c. 266 (St. 1922, c. 486, § 1). The common law definition of partnership, well developed through case law, and clearly stated by this court in decisions during the decade preceding the adoption of G. L. c. 266,

"partnership" must be defined "nonstatutorily," and by its "common definition." This so-called "nonstatutory" definition of "partnership" is "an association of persons working toward a common goal." According to the Commonwealth, the league meets this definition because the league's officers, coaches, assistant coaches, and managers worked toward the desired goal of teaching young men baseball through which they would develop "ideals of good sportsmanship, honesty, loyalty, courage and reverence leading to healthy adult lives" (citing art. 2 of the league's Constitution). In denying Campbell's motion for a required finding, the judge agreed with the Commonwealth's formulation. He stated: "I think the intent of the statute is to prevent publishing of false statements, to someone who is a member of an association, or a society or something like that . . . ." Additionally, during deliberations, the judge responded, "No," to the jury's question whether "the 'for profit' [component is] necessary to qualify an association as a partnership?"

Both the Commonwealth and the judge relied on a definition of partnership that was mistakenly broad. "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." (Citations omitted.) *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). Because we must construe the meaning of a criminal statute, we note again: "It is a well-established proposition that criminal statutes are to be construed narrowly. We have stated

---

§ 92, contained the same basic requirements as the UPA definition. For example, in *McMurtrie* v. *Guiler*, 183 Mass. 451 (1903), this court stated that: "[T]here seems to be an agreement of the authorities that where persons associate themselves together to carry on a joint business for their common benefit, to which each contributes either property or services, and the profits arising therefrom are to be shared between them, the essential elements of a contract of partnership are made out." *Id.* at 453, and cases cited. See *Estabrook* v. *Woods*, 192 Mass. 499, 502-503 (1906).

that '[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning.' " *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991), quoting *Commonwealth* v. *Connolly*, 394 Mass. 169, 174 (1985).

In 1907, when the Legislature enacted c. 266, § 92 (St. 1907, c. 383), "partnership" was well understood as descriptive of a legal, business-for-profit relationship. See *Estabrook* v. *Woods*, 192 Mass. 499 (1906); *McMurtrie* v. *Guiler*, 183 Mass. 451 (1903); *Lawrence* v. *Snow*, 156 Mass. 412 (1892); *Thurston* v. *Horton*, 16 Gray 274 (1860). While the word "partner" has also been known to describe other kinds of relationships, as diverse as husband and wife or two people who dance together, see Webster's Third New Int'l Dictionary 1648 (2d ed. 1959), we must credit the Legislature, in drafting a criminal statute, to have considered the well-settled legal meaning of the term it chose.

The Commonwealth argued in opposition to Campbell's motion for a required finding that, if the Legislature had intended to include an organization like the league, there was no term other than "partnership" to describe it. We cannot agree. The Legislature could have used the term "voluntary association," as it did in G. L. c. 266, § 58 (1990 ed.), which was enacted in 1884 (St. 1884, c. 174), prior to G. L. c. 266, § 92 (and under which Campbell was charged, but found not guilty, see note 1, *supra*). It could have used the term "organization," "society," "club," or "group united for a common purpose," any of which would have described the league more accurately than "partnership."

The record reflects, in the Commonwealth's words, that the league was "an association of individuals organized for the purpose of teaching young boys sportsmanship and life skills through baseball." There was no evidence that the league was organized as a profit-making venture.[5] We believe

---

[5]The Commonwealth never addresses who the "partners" are that form the alleged "partnership." Under the Commonwealth's definition, it seems that the officers, team managers, coaches, parents, players, and fans all share in the common purpose. To suggest that all of these people were partners in the partnership and thus liable for its debts and entitled to a

this is a necessary component of a "partnership" for purposes of G. L. c. 266, § 92.[6]

On review of a motion for a required finding, the issue is "whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Armand*, 411 Mass. 167, 169 (1991), quoting *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979). The evidence presented in this case failed to show that the league was one of the entities covered by G. L. c. 266, § 92. Therefore, even though the evidence may have been sufficient to permit a reasonable trier of fact to conclude that Campbell knowingly presented false financial reports, her actions did not violate the statute and her motion for a required finding of not guilty should have been allowed. See *Commonwealth* v. *Brown*, 391 Mass. 157, 158-160 (1984).

The judgment is reversed, the verdict is set aside, and a finding of not guilty is to be entered on remand to the Superior Court.

*So ordered.*

---

share of its assets further reveals the weakness of the Commonwealth's argument.

[6]The Commonwealth relies on *Zimmerman* v. *Bogoff*, 402 Mass. 650 (1988), in which we held that "even if the arrangements at issue fall short of a textbook joint venture, they are sufficiently similar to such an endeavor to create a fiduciary relationship . . . similar to that which exists among parties to a joint venture." *Id.* at 660, quoting *Shain Inv. Co.* v. *Cohen*, 15 Mass. App. Ct. 4, 11 (1982). We did not hold in that case, as the Commonwealth seems to believe, that the arrangement at issue *was* a joint venture; rather, we held that it resembled a joint venture so closely that we felt justified in recognizing a fiduciary relationship among the members. Additionally, *Zimmerman* involved a question of civil liability and not, as here, a question of construing a statute for purposes of criminal liability. Finally, we note that the facts in *Zimmerman* came a lot closer to the "textbook" definition of joint venture than the facts here come to the "textbook" definition of partnership.