COMMONWEALTH *vs.* GIANFRANCO GIAVAZZI.

No. 02-P-806.

Suffolk. May 5, 2003. - January 29, 2004.

Present: Lenk, Smith, & Cowin, JJ.

*Fraud.*

The judge at the trial of a criminal complaint alleging identity fraud in violation of G. L. c. 266, § 37E(*b*), erred in not allowing the defendant's motion for a required finding of not guilty, where the Commonwealth did not establish that the defendant impersonated another without the other's express authorization. [375-378]

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 7, 2000.

The case was tried before *Annette Forde*, J.

*Angela G. Lehman* for the defendant.

*Donna Jalbert Patalano*, Assistant District Attorney, for the Commonwealth.

Cowin, J. The defendant was convicted by a jury of identity fraud pursuant to G. L. c. 266, § 37E(*b*), a relatively new offense inserted by St. 1998, c. 397, § 1, effective March 3, 1999.[1] On appeal, he claims that (1) the trial judge erred in not allowing his motion for a required finding of not guilty; (2) the prosecutor's closing argument infringed on his constitutional right to remain silent and misstated the law on identity fraud; and (3) the Commonwealth's decision to charge him with identity fraud, rather than with possession of a false driver's license under G. L. c. 90, § 24B, created jury confusion, resulting in an unfair verdict. We conclude that the Commonwealth failed to introduce sufficient evidence on at least one of the ele-

[1]Required findings of not guilty were entered on charges of uttering a false instrument, G. L. c. 267, § 5, and forgery of an instrument, to wit, a check, G. L. c. 267, § 1.

ments required for conviction under G. L. c. 266, § 37E(*b*). It is therefore unnecessary to address the defendant's remaining arguments.

1. *Material facts.* The jury could permissibly have found the following. On August 7, 2000, the defendant presented two checks for payment at a branch of Fleet Bank. The checks were payable to Mario Jaramillo and were payroll checks drawn on an account maintained by Printed Circuit Corporation, Jaramillo's employer.[2] The checks were endorsed "Mario Jaramillo" without any limitation. The defendant presented to the teller three forms of photographic identification: (1) a United Parcel Service employee card in the name of Jaramillo, which the bank did not accept as valid identification; (2) a resident alien identification card with Jaramillo's name but the defendant's picture; and (3) a New Jersey driver's license, again with Jaramillo's name but the defendant's photograph. Convinced that at least the resident alien identification card and the driver's license had been altered, bank personnel notified the police and these charges ensued.

On cross-examination, the defendant elicited from two Commonwealth witnesses certain testimony of a partially exculpatory nature. Barbara Minkwitz, a senior investigator of the bank's security division, testified without objection that she had learned through a contact at Printed Circuit Corporation that Jaramillo had given the checks to the defendant for cashing. Michelle O'Donnell, director of human resources at Printed Circuit Corporation, was permitted to testify that Jaramillo told her that he had endorsed the checks and given them to the defendant so that the defendant could cash the checks for him.[3] The defendant did not testify, and offered no other evidence.

2. *Discussion.* General Laws c. 266, § 37E(*b*), provides: "Whoever, with intent to defraud, poses as another person without the express authorization of that person and uses such

[2]The defendant had also been an employee of Printed Circuit Corporation.

[3]Certain objections to O'Donnell's testimony were sustained; one objection was overruled; and certain questions were asked without objection. The validity of the rulings is not at issue; the defendant elicited the testimony and the portion that was admitted is admitted for all purposes. See *Commonwealth* v. *Carmona*, 428 Mass. 268, 271 (1998).

person's personal identifying information to obtain or to attempt to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of identity fraud and shall be punished . . . ." Thus, a conviction requires that the Commonwealth prove beyond a reasonable doubt four elements, specifically, that a defendant (1) posed as another person; (2) did so without that person's express authorization; (3) used the other person's identifying information to obtain, or attempt to obtain, something of value[4]; and (4) did so with the intent to defraud. In reviewing the judge's denial of the defendant's motion for a required finding, "we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979). There must be adequate evidentiary support for each essential element of the offense. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979).

There is no question that, at the time he presented the checks for payment, the defendant posed as Jaramillo. The jury could permissibly find that he altered both the alien identification card and the New Jersey driver's license, and safely conclude therefrom that he attempted to convince bank representatives that he was in fact the payee of the checks. The jury were also warranted in finding that the defendant posed as Jaramillo in order to obtain something of value, namely, the proceeds of the checks. We need not address the troublesome question whether the Commonwealth proved beyond a reasonable doubt that the defendant acted with an intent to defraud,[5] because we conclude in any event that the Commonwealth has not established that

---

[4] It is also an offense under this section to use such personal identifying information to obtain, or attempt to obtain, any identification card or other evidence of the other person's identity.

[5] It is unclear to us what is required to show an "intent to defraud" in these circumstances. Certainly the defendant employed the misrepresentation as a means of persuading the bank to cash the checks, something it probably would not have done for someone it could not identify. On the other hand, there was little, if any, evidence from which the jury could infer that the

the defendant impersonated Jaramillo "without the express authorization" of the latter.

Absent objection, the hearsay testimony of two witnesses repeating Jaramillo's out-of-court statements was admissible for all purposes. See *Commonwealth* v. *Carmona*, 428 Mass. 268, 271 (1998). While the jury were not required to believe the hearsay that Jaramillo had given the checks to the defendant to cash, disbelief does not translate into evidence of the opposite. Particularly given the absence of evidence either that Jaramillo's endorsement was forged or that the defendant stole the endorsed checks, the only finding on the subject that was permissible was that the effort of the defendant to cash the checks had been authorized.

This, of course, does not mean that Jaramillo necessarily authorized the defendant to assume his (Jaramillo's) identity when presenting the checks to the bank. The "express authorization" referred to in the statute is an authorization to pose as another, not merely an authorization to undertake a transaction (here, the cashing of the checks). However, the absence of express authorization is an element of the offense on which the Commonwealth has the burden of proof.

Here, the Commonwealth presented evidence that the defendant had in his possession identification of Jaramillo that he had altered by affixing his own photograph. He used the altered identification to attempt to cash checks payable to Jaramillo that Jaramillo had endorsed in blank. As indicated, there was no evidence that the defendant stole either the checks or the identification, or that Jaramillo's signatures endorsing the checks either were not genuine or were obtained by fraud or duress. Indeed, the defendant was permitted to introduce Jaramillo's statement that he had given the checks to the defendant so that they could be cashed.

Thus, there was no direct evidence of an absence of express authorization. Any finding by the jury on that subject would

defendant intended to deprive anyone of something of value. Jaramillo gave the defendant checks that Jaramillo had received as compensation from his employer endorsed in blank, and thus payable to the bearer. See G. L. c. 106, § 3-205(*b*). Because the Commonwealth's case fails for another reason, we need not attempt to resolve the issue.

have been dependent on inferences drawn on the basis of other evidence. Such inferences would not rise above the level of speculation. We do not see how the jury could reasonably draw an inference either that Jaramillo authorized the defendant to pose as he did or that he did not authorize the pose. Ordinarily, absence of authorization will be shown by the testimony of the person whose identity has been used by another. We do not know why Jaramillo, who was obviously available, was not called as a witness in this proceeding. Without favorable testimony by him, however, the Commonwealth was left with no evidence as to the existence or absence of authorization to pose, and its case under the statute was insufficient.

> *Judgment reversed.*
>
> *Verdict set aside.*
>
> *Judgment for the defendant.*