NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11927

FEDERAL NATIONAL MORTGAGE ASSOCIATION  vs.  EDWARD M. REGO &
another.[1]


Essex.      November 3, 2015. - May 24, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Summary Process, Appeal.  Mortgage, Foreclosure.  Real Property,
    Mortgage.  Practice, Civil, Summary process, Counterclaim
    and cross-claim.  Consumer Protection Act, Unfair act or
    practice.  Housing Court, Jurisdiction.  Jurisdiction,
    Housing Court.


        Summary Process.  Complaint filed in the Northeast Division
of the Housing Court Department on August 31, 2012.

        Motions for partial summary judgment were heard by Timothy
F. Sullivan, J., and a motion to dismiss counterclaims was also
heard by him.

        The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


        Michael Weinhold for the defendants.
        Richard E. Briansky for the plaintiff.
        Thomas J. Santolucito & Danielle C. Gaudreau, for Real
Estate Bar Association for Massachusetts, Inc., & another, amici
curiae, submitted a brief.

_____

        [1] Emanuela R. Rego.

Daniel Bahls & Amanda Winalski, for Community Legal Aid, amicus curiae, submitted a brief.

DUFFLY, J.  The plaintiff, Federal National Mortgage Association (Fannie Mae), filed a complaint for summary process in the Housing Court to establish its right to possession of a house that had been owned by Edward M. Rego and Emanuela R. Rego (Regos) that Fannie Mae purchased at a foreclosure sale.  In response, the Regos argued that the foreclosure sale conducted by the bank that held the mortgage on the property, GMAC Mortgage, LLC (GMAC), was void because GMAC's attorneys had not been authorized by a prior writing to undertake the actions set forth in G. L. c. 244, § 14 (§ 14).  The Regos also asserted an equitable defense and counterclaims pursuant to G. L. c. 93A.  A Housing Court judge allowed Fannie Mae's motion for summary judgment "as to possession only," and scheduled a bench trial on the Regos' counterclaims under G. L. c. 93A.  Thereafter, Fannie Mae moved to dismiss the counterclaims for lack of subject matter jurisdiction; that motion was allowed.  Final judgment for possession entered in favor of Fannie Mae, and the Regos appealed.  We transferred the case to this court on our own motion.

We are confronted with two issues in this appeal.[2]  First,

---

[2] We reject as without merit the Regos' claim that the affidavit of sale submitted by Fannie Mae to establish its prima

we consider the meaning of the language in § 14, authorizing "the attorney duly authorized by a writing under seal" to perform acts required by the statutory power of sale. We conclude that the expression is a term of art that refers to a person authorized by a power of attorney to act in the place of the person granting that power. At the time the provision was enacted by amendment in 1906, the phrase "power of attorney" had the same meaning as a "power under seal." Here, because no person purported to act under a power of attorney, but only as legal counsel acting on behalf of a client, the statutory language on which the Regos rely to challenge the validity of the foreclosure is inapplicable. We conclude also that legal counsel may perform the acts at issue in this case without written authorization, as the "person acting in the name of such mortgagee." G. L. c. 244, § 14. The foreclosure therefore suffers no defect on the asserted ground that GMAC failed to provide such authorization to its attorneys.

Second, we consider whether, in a postforeclosure summary

---

facie case of possession did not comply with the requirement of G. L. c. 244, § 15, that "the attorney" must be "duly authorized by a writing" to sign and record the affidavit. Assuming without deciding that § 15 requires such written authorization, the record on appeal reflects that on November 28, 2011, GMAC provided written authorization to its attorney, who then was properly authorized to sign the affidavit of sale on April 24, 2012, and record it on May 9, 2012. See Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 642 (2012) ("where the affidavit of sale . . . meets the particular requirements of § 15, a plaintiff has made a prima facie case").

process action, the Housing Court may consider defenses and counterclaims seeking relief pursuant to G. L. c. 93A, and conclude that the Housing Court has limited authorization to entertain such claims. To the extent that the Regos appear to assert an equitable defense to the foreclosure sale and seek, in addition to damages, the relief of voiding the sale, the judge properly could have addressed those claims in the summary process action. It is not apparent from the judge's decision that he considered these claims when deciding the parties' cross motions for summary judgment. We therefore vacate the judgment and remand for further proceedings consistent with this opinion.

Background. The Regos purchased a house on Green Street in Billerica in 1976. In 1995, they refinanced the home mortgage loan by borrowing $122,000 from Empire of America Realty Credit Corporation, and executed a promissory note and mortgage in its favor. Empire of America Realty Credit Corporation assigned the mortgage to Wells Fargo Bank, and the following year, Wells Fargo Bank assigned the mortgage to GMAC Mortgage Corporation. Eventually, GMAC Mortgage Corporation assigned the mortgage to a related entity, GMAC, which ultimately foreclosed on the property.

In 2008, GMAC notified the Regos by mail that they were in default under the terms of the mortgage loan because they had missed one monthly payment in the amount of $1,723.12, and that,

in addition, they owed $77.52 in late charges and $11.25 in fees.  In April, 2010, GMAC notified the Regos that they were eligible for the Federal Home Affordable Modification Program, 12 U.S.C. § 5219 (HAMP), and offered modified terms of payment.[3] The Regos rejected the offer, explaining that they could not afford the modified terms and requesting a more affordable modification.  The next month, GMAC sent a second HAMP modification offer, proposing terms similar to the first offer, which the Regos also apparently rejected.  On March 15, 2011, GMAC notified the Regos that GMAC was now due a total of $35,803, including mortgage loan payments, late charges, and fees, and informed them that they had thirty days in which to cure the default.

On May 4, 2011, the law firm of Orlans Moran, on behalf of its client, GMAC, sent the Regos a "Notice of Intention to Foreclose."  The notice was in letter form, on Orlans Moran letterhead, and was signed, "GMAC Mortgage, LLC, By its Attorneys, Orlans Moran PLLC."  Orlans Moran attached to the letter a copy of the mortgagee's notice of sale of real estate, which it published in the Billerica Minuteman on May 5, 12, and 19, 2011.  The notice identified the property and contained information concerning a public auction to be held on May 27,

---

[3] The proposed monthly payment amount in the modification offer was $1,240.84.

2011.  The following information was set forth at the end of the notice of sale:  "GMAC Mortgage, LLC, Present Holder of said Mortgage, By its Attorneys, Orlans Moran PLLC."

On May 23, 2011, the Regos sent GMAC a facsimile transmission requesting a "negotiated pay-off" to avoid the pending foreclosure, scheduled for May 27, 2011.  The Regos explained that they were attempting to obtain a reverse mortgage loan, but that the new loan amount would still leave them $10,000 short of the pay-off amount.  They asked GMAC for "compassion" in negotiating a pay-off agreement to help them stay in their home.  On May 25, 2011, GMAC acknowledged the Regos' request, informed them that the request was being processed, and stated that GMAC would not "conduct a foreclosure sale" while the request was under review.  The next day, GMAC denied the loan modification request.  GMAC proceeded with the foreclosure auction the following day, where it was the highest bidder.  GMAC eventually assigned its bid to Fannie Mae, and executed a foreclosure deed.[4]

Fannie Mae served the Regos with a notice to quit and subsequently filed a summary process complaint for possession. This litigation followed.

Discussion.  We review a decision on a motion for summary

---

[4] The foreclosure deed, assignment of bid, and affidavit of sale were recorded in the Middlesex North registry of deeds on May 9, 2012.

judgment de novo.  Pinti v. Emigrant Mtge. Co., 472 Mass. 226,

231 (2015).  Summary judgment is appropriate where there are no

material facts in dispute and the moving party is entitled to

judgment as a matter of law.  Id.

1.  Whether GMAC's attorneys had authority to act under

G. L. c. 244, § 14.  General Laws c. 244, § 14, is one of the

principal statutory provisions regulating foreclosures conducted

under the statutory power of sale.[5]  See U.S Bank Nat'l Ass'n v.

Ibanez, 458 Mass. 637, 647-648 (2011).  That section provides in

part:

> "The mortgagee or person having estate in the land
> mortgaged, or a person authorized by the power of sale, or
> the attorney duly authorized by a writing under seal or the
> legal guardian or conservator of such mortgagee or person
> acting in the name of such mortgagee or person, may, upon
> breach of condition and without action, perform all acts
> authorized or required by the power of sale . . ."
> (emphasis added).

G. L. c. 244, § 14.  The statute further provides "that no sale

under such power shall be effectual to foreclose a mortgage,

unless, previous to such sale, notice of the sale has been

published once in each of [three] successive weeks . . . and

---

[5] The requirements for a "statutory power of sale," set
forth in G. L. c. 183, § 21, provide that "if a mortgage
provides for a power of sale, the mortgagee, in exercising the
power, may foreclose without obtaining prior judicial
authorization 'upon any default in the performance or
observance' of the mortgage, . . . including, of course,
nonpayment of the underlying mortgage note."  See Eaton v.
Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 579-580 (2012),
quoting G. L. c. 183, § 21.

notice of the sale has been sent by registered mail." Id.
These requirements, establishing those who are entitled to
foreclose and the notices that must be given, "must be strictly
adhered to." U.S Bank Nat'l Ass'n v. Ibanez, supra at 647.

The Regos argue that the provision requires prior written
authorization from a mortgagee before its attorney may perform
the statutory acts necessary to conduct a foreclosure sale. In
their view, the foreclosure conducted by GMAC was defective
because GMAC had not provided the requisite written
authorization before its attorneys published and mailed the
notices required by § 14.[6]

Whether § 14 requires a mortgagee to provide written
authorization to its attorney to perform the acts required by
the statute is a question of statutory interpretation. When the
meaning of a statute is not clear from its plain language, well-
established principles of statutory construction guide our
interpretation. See DiFiore v. American Airlines, Inc., 454
Mass. 486, 490 (2009). We seek to "ascertain the intent of a
statute from all its parts and from the subject matter to which

---

[6] Neither party claims that written authorization must be
"under seal" as required by the statute, G. L. c. 244, § 14.
This is likely a consequence of the Legislature's nullification
of the seal requirement for all instruments relating to an
interest in land. See G. L. c. 183, § 1A, inserted by St. 1977,
c. 152. As we explain, infra, the statutory language requiring
a "writing under seal," G. L. c. 244, § 14, remains relevant to
our interpretation of the statutory language used by the
Legislature at the time the provision was enacted.

it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense."  Seideman v. Newton, 452 Mass. 472, 477 (2008). "Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, [and] prior legislation . . . . General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense" (citation omitted).  Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 24 (2006). We bear in mind that "[w]ords that are not defined in a statute should be given their usual and accepted meanings," Seideman, supra at 477-478, which we derive "from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  Seideman, supra at 478, quoting Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).

The statutory language providing that "the attorney duly authorized by a writing under seal" may perform the acts authorized by the power of sale was added by amendment in 1906. See St. 1906, c. 219, § 1.  Thus, we first must determine the usual and accepted meaning of the statutory language from sources that likely were known to the Legislature at that time.

See Seideman v. Newton, supra at 477-478.

The word "attorney" is not defined anywhere in G. L. c. 244, the chapter of the General Laws governing the foreclosure and redemption of mortgages.  The first edition of Black's Law Dictionary defines an attorney as follows:  "In the most general sense this term denotes an agent or substitute, or one who is appointed and authorized to act in the place of another. . . .  Attorneys in the modern use, are of two sorts, attorneys at law and attorneys in fact . . . ."  Black's Law Dictionary 104 (1891).  Describing the "two sorts" of attorneys, the first and second editions of Black's Law Dictionary state that an "attorney at law" is an "advocate, counsel, official agent employed in preparing, managing, and trying cases in the courts," and an "officer in a court of justice, who is employed by a party in a cause to manage the same for him." See id.; Black's Law Dictionary 104 (2d ed. 1910).  By contrast, an "attorney in fact" is defined as a "private attorney authorized by another to act in his place and stead, either for some particular purpose, as to do a particular act, or for the transaction of business in general, not of a legal character.  This authority is conferred by an instrument in writing, called a 'letter of attorney,' or more commonly a 'power of attorney.'"  Black's Law Dictionary 105 (1891).  Black's Law Dictionary 103 (2d ed. 1910).  Cases from this era also draw a distinction

between the two types of attorneys.  See, e.g., Smith v. Abbott, 221 Mass. 326, 329-330 (1915) (discussing differing roles of individual retained as "counsel" to bring ejectment action, and another individual authorized by "power of attorney under seal" to "manage and convey property").[7]

Whether § 14 refers to an attorney in fact or to an attorney at law requires that we consider the remaining words in the statutory provision.  The provision makes specific reference not merely to an attorney, but to "the attorney duly authorized by a writing under seal."  Legal treatises from the period support the view that, at the turn of the Twentieth Century, the phrase "duly authorized by a writing under seal" referred to a person authorized to act by a power of attorney.  As one commentator stated, "[t]he expression 'power of attorney,' in a strict sense, implies a power under seal."  Crocker's Notes on Common Forms 417 (5th ed. 1913), citing Cutler v. Haven, 8 Pick. 490 (1829).  See J. Story, Commentaries on the Law of Agency 77 (8th ed. 1874) ("In regard to both a general and to a special express authority [conferred on an agent], it may be conferred by a formal instrument, as by a letter under seal . . .").  In light of the above, we conclude that to the legislators enacting

---

[7] A commentator from this era also stated that the class of attorneys "is divisible into two kinds, differing very widely in their rights, duties, obligations, and responsibilities: (1.) Attorneys in law; (2.) Attorneys in fact."  J. Story, Commentaries on Agency Law 20 (8th ed. 1874).

the 1906 amendment, the phrase "the attorney duly authorized by a writing under seal" meant the person authorized by a power of attorney, also known as an attorney in fact; it is not a reference to legal counsel (the attorney at law).

The remaining language that was also added to § 14 as part of the 1906 amendment confirms this understanding. Prior to the amendment, the statute authorized three categories of persons to perform the acts required by the power of sale, including the mortgagee.[8] St. 1906, c. 219, § 1. In 1906, the Legislature added four additional categories of potential actors: an "attorney duly authorized by a writing under seal," the "legal guardian [of such mortgagee]," the "conservator of such mortgagee," and a "person acting in the name of such mortgagee or person." Id. Like an attorney in fact, both a legal guardian and a conservator[9] occupy a formal status conferred by law that permits each to act in the name of a principal, without

_____

[8] The other two categories were "the person who has his estate in the land mortgaged" and "a person authorized by the power of sale." See St. 1906, c. 219, § 1.

[9] In 1891, Black's Law Dictionary defined a guardian as

"a person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person, who, for some peculiarity of status, or defect in age, understanding, or self-control, is considered incapable of ministering his own affairs."

Black's Law Dictionary 551 (1891). A conservator was defined as "a guardian, protector, or preserver." Id. at 255.

seeking authorization from the principal.  See, e.g., Johnson v. Kindred Healthcare, Inc., 466 Mass. 779, 785-787 (2014) (analyzing current statutory scheme granting "broad[] decision-making authority" to "attorneys in fact, guardians, and conservators").

The similar status afforded an attorney in fact, a legal guardian, and a conservator supports our determination that "the attorney duly authorized by a writing under seal" means an attorney in fact.  See Yates v. United States, 135 S. Ct. 1074, 1085 (2015) ("we rely on the principle of nosciutur a sociis -- a word is known by the company it keeps").  We conclude that, by adding this statutory language, the Legislature intended to authorize an attorney in fact to perform the acts of providing notice of a foreclosure sale required by § 14, and did not intend to require the mortgagee to issue written authorization to its legal counsel before counsel may perform such acts on the mortgagee's behalf.

Finally, we reject the Regos' argument that, by enacting the 1906 amendment, the Legislature sought to overrule Cranston v. Crane, 97 Mass. 459, 464 (1867) (Cranston), which held that a mortgagee may authorize another to perform acts required by the power of sale without granting "authority under seal," otherwise known as the power of attorney.  The Regos contend that the Legislature intended to require an attorney to obtain prior

written authorization in order to abrogate our holding in Cranston. The Regos' interpretation of the statute simply cannot be squared with the meaning of the words employed by the Legislature when the amendment was enacted, and there is no other basis on which to conclude that the Legislature sought to overrule Cranston forty years later by requiring a mortgagee to provide written authorization to permit its legal counsel to act on its behalf.

The argument advanced by the Regos also ignores the fourth category of persons authorized to act by the 1906 amendment, the "person acting in the name of such mortgagee." See G. L. c. 244, § 14. The inclusion of this provision in the 1906 amendment likely reflects the Legislature's intent to preserve the long-standing practice that a mortgagee may delegate its authority to perform the acts required by the power of sale. See Fairhaven Sav. Bank v. Callahan, 391 Mass. 1011, 1012 (1984); Brown v. Wentworth, 181 Mass. 49, 52 (1902) (relying on Cranston, supra at 464, for proposition that mortgagee "put the foreclosure into professional hands, and relied upon those whom he employed to see that all the proper steps were taken"). Therefore, just as the mortgagee may direct its agent to perform the acts required by the power of sale, the mortgagee may instruct its legal counsel to undertake such acts "in the name of [the] mortgagee." See G. L. c. 244, § 14. Because the

attorneys at Orlans Moran, acting on behalf of GMAC, published and mailed the notices at the direction of GMAC, the foreclosure suffers no defect on this ground.

2. Housing Court's jurisdiction to resolve G. L. c. 93A counterclaims. The Regos asserted an equitable defense in answer to Fannie Mae's complaint, and filed counterclaims for violations of G. L. c. 93A. In addition to claims based on asserted violations related to the statutory power of sale, the Regos claimed that GMAC engaged in unfair or deceptive practices when it charged them excessive late fees on multiple occasions during a single month, in violation of the terms of the mortgage note, and when it sent them deceptive notices concerning their eligibility for loan modification in the days leading up to the foreclosure.[10]

As stated, after granting summary judgment in favor of Fannie Mae "as to possession only," the judge scheduled trial on the Regos' counterclaims. Fannie Mae then moved to dismiss the counterclaims for lack of "subject matter jurisdiction."[11] At the first of two hearings on this motion, Fannie Mae contended

---

[10] The Regos also asserted in their answer that GMAC committed a breach of the implied covenant of good faith and fair dealing in the mortgage note.

[11] Fannie Mae's motion to dismiss for lack of jurisdiction was also, in the alternative, a request for clarification regarding "which components of the Defendants' [G. L.] c. 93A Claim remain at issue in this action."

that, because the counterclaims sought only damages under G. L. c. 93A related to loss of possession, and GMAC had prevailed on the question of possession, the Housing Court "no longer had jurisdiction" to hear the G. L. c. 93A claim. The Regos argued that, based on Bank of Am., N.A. v. Rosa, 466 Mass. 613, 615 (2013) (Rosa), their claims of wrongful or deceptive conduct established an equitable challenge to the foreclosure sale that would entitle them to postforeclosure relief of setting aside the foreclosure sale if they prevailed. The judge dismissed the counterclaims without setting forth the basis of his ruling. He then scheduled a second hearing on the question whether he could proceed to trial on the counterclaims under G. L. c. 93A, inviting the parties to further discuss the impact of our decision in Rosa. Fannie Mae argued that, under Rosa, the Housing Court had "limited jurisdiction" and could not entertain the claim under G. L. c. 93A where the judge had ruled that it was entitled to possession. The judge allowed Fannie Mae's motion to dismiss, and final judgment entered in favor of Fannie Mae on its claim for possession.

We observe first that, as a jurisdictional matter, the Housing Court has broad authority to resolve civil claims and counterclaims that relate "directly or indirectly" to "the health, safety, or welfare, of any occupant of any place used . . . as a place of human habitation," as well as the

authority to resolve all "housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners" of such housing. G. L. c. 185C, § 3. See LeBlanc v. Sherwin Williams Co., 406 Mass. 888, 894 (1990). See also Rosa, supra at 621-625 (discussing historical development resulting in expanded jurisdiction of Housing Court). Therefore, under G. L. c. 185C, § 3, the Housing Court has jurisdiction to adjudicate a claim brought under G. L. c. 93A alleging, for instance, an unfair or deceptive act or practice related to the sale or rental of housing, and may award equitable or monetary relief.

The Housing Court also has jurisdiction to hear summary process complaints, in which the owner of a housing unit seeks to evict the occupant of that unit and recover possession. See G. L. c. 185C, § 3; G. L. c. 239, § 1. In summary process cases, the occupant facing eviction may bring a defense or counterclaim that the owner of the property has committed a breach of warranty, a breach of any material provision of the rental agreement, or a "violation of any other law." G. L. c. 239, § 8A. When the summary process action follows a foreclosure on the property, the foreclosed occupant facing eviction may assert that the power of sale was not strictly complied with and that the foreclosure is therefore void, entitling the occupant to possession. See Bank of N.Y. v.

*Bailey*, 460 Mass. 327, 334 (2011).  The occupant also may assert other affirmative defenses or counterclaims, such as those based on violations of G. L. c. 93A or G. L. c. 151B, and may seek possession, monetary damages, or other equitable relief.  See *Rosa*, *supra* at 625 (counterclaim for unlawful discrimination may be decided in postforeclosure summary process action where it "could vitiate the title, or possession").  Where the affirmative defenses or counterclaims challenge the right to possession, the judge must resolve those claims as part of the summary process action.  *Id*. at 624-625.

But it is also the case that where a judge determines that an occupant's defenses or counterclaims do not affect the right to possession, the judge may sever the counterclaims and proceed to determine possession in the summary process action.  See Commentary to Rule 5 of the Uniform Summary Process Rules, Mass. Ann. Laws Court Rules, at 801 (LexisNexis 2015-2016) ("the court retains discretion to sever a counterclaim which cannot appropriately be heard as part of the summary process action").  Thereafter, pursuant to the Housing Court's general jurisdiction under G. L. c. 185C, § 3, the judge may in a separate proceeding determine whether the occupant is entitled to monetary damages, other forms of equitable relief, or attorney's fees.[12]  This

---

[12] If, on the other hand, a judge determines that the Housing Court lacks jurisdiction over a counterclaim under G. L.

approach conserves judicial resources because the Housing Court judge already will be familiar with the issues presented; it also reduces further expenditure of resources by a summary process defendant, who otherwise would be required to file a separate action in another court, thereby "promot[ing] the legislative goal of 'just, speedy, and inexpensive' resolution of summary process cases."  See Bank of N.Y. v. Bailey, supra at 334, quoting Rule 1 of the Uniform Rules of Summary Process.

Here, the Regos followed the correct procedure in asserting their equitable defense and G. L. c. 93A counterclaims in their answer to Fannie Mae's complaint.  Contrast U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 422 n.4 (2014).  But we are unable to ascertain on this record whether, in the context of the summary process action, the judge determined that the Regos' G. L. c. 93A counterclaims and defenses did not entitle them to equitable relief affecting the right to possession, or whether he intended to consider that form of equitable relief, along with all other potential forms of equitable and monetary relief, in the separate proceeding but erroneously concluded that he lacked jurisdiction to do so.

---

c. 185C, § 3, the judge may dismiss the counterclaim or, alternatively, ask the Chief Justice of the Trial Court "to transfer the case, or the judge, or both, to the appropriate department of the Trial Court."  Konstantopoulos v. Whately, 384 Mass. 123, 129 (1981).  See Skawski v. Greenfield Investors Prop. Dev. LLC, 473 Mass. 580, 592 (2016).

Conclusion.  The order dismissing the defendants'
counterclaims is reversed, and the decision allowing the
plaintiff's motion for summary judgment is vacated.  The matter
is remanded to the Housing Court for further proceedings
consistent with this opinion.

So ordered.