NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12371

COMMONWEALTH  vs.  EMILIA ESCOBAR.


Suffolk.     January 10, 2018. - March 29, 2018.

Present:  Gants, C.J., Lowy, Budd, Cypher, & Kafker, JJ.


False Impersonation & Identity Fraud.  Fraud.  Practice,
     Criminal, Plea.  Words, "Anything of value."



Complaint received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on October 2, 2003.

A motion to withdraw a plea of guilty, filed on November
18, 2016, was heard by Kenneth J. Fiandaca, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Edward Crane for the defendant.
Dara Z. Kesselheim, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  The defendant, Emilia Escobar, pleaded guilty to

identity fraud pursuant to G. L. c. 266, § 37E (b), in

connection with providing a false name to a police officer

during a traffic stop.  Here, she appeals from the denial of a

motion to withdraw the guilty plea, claiming that there were insufficient facts to establish that she attempted to receive, or received, "anything of value" within the meaning of § 37E (b). Because we conclude that the phrase "anything of value," as it appears in the statute, does not include avoiding criminal prosecution, we reverse.

Background. The facts are uncontested. In October, 2002, a State police trooper stopped the defendant for driving an automobile with an excessively loud exhaust. The defendant told the trooper falsely that her name was Ana Escobar, gave a false date of birth, and said that she did not have her license with her. Upon conducting a check with the registry of motor vehicles, the trooper learned that Ana Escobar's license was suspended and issued a citation in Ana Escobar's name.

Almost one year later, an investigation revealed that the defendant had been untruthful at the time of the stop. A complaint was issued charging the defendant with multiple infractions in addition to identity fraud: operating a motor vehicle with a suspended license;[1] improper operation of a motor vehicle; failing to possess a license while operating a motor vehicle; and providing a false name to a police officer.

---

[1] A check with the registry of motor vehicles revealed that the defendant, too, had a suspended license.

In March, 2004, pursuant to a plea agreement, the defendant admitted to sufficient facts on all charges except the charge of providing a false name to a police officer, which was dismissed. Charges of operating a motor vehicle with a suspended license and identity fraud were continued without a finding for nine months, then dismissed, and the remaining charges were placed on file.

Over a decade later, in November, 2016, the defendant filed a motion to withdraw her plea to the charge of identity fraud, alleging that there was an insufficient factual basis for the charge.[2]  After a hearing, the judge denied the defendant's motion.  The defendant appealed, and we allowed her application for direct appellate review.

Discussion.  In order for a judge to accept a guilty plea, he or she must find "sufficient facts on the record to establish each element of the offense."  Commonwealth v. Hart, 467 Mass.

---

[2] There is no explanation in the record for why the defendant waited more than ten years to attempt to withdraw her plea.  However, in the memorandum supporting her motion, the defendant argues that her admission to sufficient facts for a finding of guilty on the identity fraud charge could have significant consequences on her status as a legal permanent resident and the risk of deportation.  See 8 U.S.C. § 1227(a)(2)(A)(ii) (2012) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude . . . is deportable"); Jordan v. De George, 341 U.S. 223, 227 (1951) ("Without exception, [F]ederal and [S]tate courts have held that a crime in which fraud is an ingredient involves moral turpitude"); 8 U.S.C. § 1101(a)(48)(A)(i) (2012) (defining "conviction" to include admission of sufficient facts to warrant finding of guilt).

322, 325 (2014), quoting Commonwealth v. DelVerde, 398 Mass. 288, 297 (1986). Ordinarily, during a plea colloquy the prosecutor recites the facts that the Commonwealth would have proved if the case had gone to trial. The defendant indicates whether he or she agrees with the facts as presented and may provide clarifications. The judge then determines whether the facts as stated establish that a particular crime has been committed. See Mass. R. Crim. P. 12 (c) (3), as appearing in 470 Mass. 1501 (2015).

In this case, although the judge accepted the defendant's plea of guilty to identity fraud on the facts as outlined supra, the defendant now argues that the facts the Commonwealth presented did not establish each element of that offense. We normally review a motion judge's decision on a defendant's motion to withdraw her guilty plea for clear error or abuse of discretion. Hart, 467 Mass. at 324. However, where, as here, there is a question of statutory interpretation, we review the matter de novo. Commonwealth v. Martin, 476 Mass. 72, 75 (2016).

1. The identity fraud statute. General Laws c. 266, § 37E, is the identity fraud statute. Subsection (b) of § 37E provides:

> "Whoever, with intent to defraud, poses as another person without the express authorization of that person and uses such person's personal identifying information to obtain or

to attempt to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of identity fraud . . . ."

The elements of identity fraud, thus, are "that a defendant (1) posed as another person; (2) did so without that person's express authorization; (3) used the other person's identifying information to obtain, or attempt to obtain, something of value; and (4) did so with the intent to defraud." Commonwealth v. Giavazzi, 60 Mass. App. Ct. 374, 376 (2004) (footnote omitted).

The defendant argues that the Commonwealth failed to present any facts tending to establish that she attempted to obtain something of value pursuant to § 37E (b) because the evasion (or the attempted evasion) of criminal prosecution is not something of value within the meaning of the statute.[3] In contrast, the Commonwealth argues that "value" as it appears in § 37E (b) includes intangible things, including avoiding criminal charges. We agree with the defendant.

The question whether the defendant committed identity fraud depends upon what the Legislature meant by the phrase "anything of value" within the context of § 37E (b). See Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996) ("Our primary duty is to interpret a statute in accordance with the intent of the

_____

[3] Because we conclude that the Commonwealth has failed to establish every element of the offense, we do not reach the question whether the actions of the defendant defrauded a police officer within the meaning of § 37E (b).

Legislature").  See also <u>Boston Police Patrolmen's Ass'n</u> v. <u>Boston</u>, 435 Mass. 718, 719-720 (2002), and cases cited.  "We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  <u>Commonwealth</u> v. <u>Campbell</u>, 415 Mass. 697, 700 (1993), quoting <u>Commonwealth</u> v. <u>Zone Book, Inc</u>., 372 Mass. 366, 369 (1977).

The statute does not define "value," and the ordinary meaning of the term can encompass both tangible and intangible things.  Webster's dictionary defines "value" as:

> "[1] the amount of a commodity, service, or medium of exchange that is the equivalent of something else:  a fair return in goods, services, or money . . . [2] monetary worth of something:  marketable price usu. in terms of a medium of exchange . . . [3] relative worth, utility or importance:  degree of excellence:  status in a scale of preferences . . . ."

Webster's Third New International Dictionary 2530 (1993).  The fact that the term has multiple meanings does not shed light on whether its use in the statute is meant to include all of them.  See <u>Commonwealth</u> v. <u>Scott</u>, 464 Mass. 355, 358 (2013) (term with multiple meanings may have only one within context of statute).  "When the meaning of a statute is not clear from its plain language, well-established principles of statutory construction guide our interpretation."  <u>Federal Nat'l Mtge. Ass'n</u> v. <u>Rego</u>, 474 Mass. 329, 334 (2016).

a.   Ejusdem generis.   Viewing the term "value" in the
context of the statute is instructive.   One who "uses
[another's] personal identifying information to obtain or to
attempt to obtain money, credit, goods, services, [or] anything
of value[] . . . shall be guilty of identity fraud."   § 37E (b).
The canon of statutory interpretation known as ejusdem generis
limits "general terms which follow specific ones to matters
similar to those specified."   Commonwealth v. Gallant, 453 Mass.
535, 542 (2009), quoting Powers v. Freetown-Lakeville Regional
Sch. Dist. Comm., 392 Mass. 656, 660 n.8 (1984).   See Banushi v.
Dorfman, 438 Mass. 242, 244 (2002).[4]

Ejusdem generis requires that the general phrase "anything
of value" in the statute be interpreted to mean only those
things that share the characteristics of the terms that appear
before it, here, "money, credit, goods, [or] services."   As the
terms "money," "credit," "goods," and "services" all refer to
that which has a market or monetary value, the phrase "anything
of value" should be limited similarly to that which can be
exchanged for a financial payment.[5]   See Banushi, 438 Mass. at

---

[4] Meaning "of the same general kind or class," ejusdem
generis is an English common-law principle of statutory
construction that can be traced back to 1596.  A. Scalia and
B.A. Garner, Reading Law:  The Interpretation of Legal Texts
§ 32, at 199, 200 (2012).

[5] The Wisconsin case upon which the Commonwealth relies is
distinguishable.  Wisconsin has an identity fraud statute

244 (limiting meaning of "building" to place of public or commercial use where statutory term was preceded by "place of assembly, theatre, special hall, public hall, factory, workshop, [or] manufacturing establishment"); Powers, 392 Mass. at 660 (limiting meaning of "or other good cause" in statute to poor performance where phrase was preceded by "inefficiency, incapacity, unbecoming conduct, [or] insubordination").

The Commonwealth argues that if the Legislature had intended to limit the statute in such a way, then the phrase "anything of value" would be unnecessary and superfluous. We are not persuaded. The phrase serves to encompass any other items that do not appear but are similar to those items that do appear. Adopting the Commonwealth's view would vitiate the statutory canon of ejusdem generis; the more general term would always strip the more specific terms of any meaning whatsoever. See Santos v. Bettencourt, 40 Mass. App. Ct. 90, 93 (1996).

b. Related subsections. A review of other relevant subsections of G. L. c. 266, § 37E, that refer to financial harm

---

similar to ours in that it punishes anyone who "intentionally uses or attempts to use any personal identifying information or personal identification document of an individual to obtain credit, money, goods, services, or anything else of value . . . ." Wis. Stat. § 943.201(2). In State v. Peters, 263 Wis. 2d 475, 482 (2003), the defendant was convicted under Wisconsin's identity fraud statute for providing a false identity so as to receive a lower bail amount. Id. at 478. The Wisconsin Supreme Court upheld the conviction concluding that bail is a form of credit. Id. at 485. Thus, the court did not need to interpret the phrase "anything else of value."

to victims reinforces our reading of § 37E (b).  See Chin v.
Merriot, 470 Mass. 527, 532 (2015) (to ascertain legislative
intent we may "consider . . . other sections of the statute and
examine the pertinent language in the context of the entire
statute").  See also Quincy City Hosp. v. Rate Setting Comm'n,
406 Mass. 431, 442 (1990).

Section 37E (a) provides several definitions for the
purposes of § 37E, including "victim," which it defines as "any
person who has suffered financial loss or any entity that
provided money, credit, goods, services, or anything of value
and has suffered financial loss as a direct result of the
commission or attempted commission of a violation of this
section."[6]  G. L. c. 266, § 37E (a).  Similar to § 37E (b),
§ 37E (c) prohibits obtaining the personal identifying
information of another without his or her permission for the
purpose of obtaining "money, credit, goods, services, anything
of value, any identification card or other evidence of such
person's identity, or to harass another."  Last, § 37E (d)
requires anyone found guilty of identity fraud to make
restitution to the victim for financial losses suffered.  These

---

[6] Significantly, although technically Ana Escobar could be
considered the victim in this case, there is no allegation that
she (or anyone else) suffered financial loss as a result of the
misuse of her identity.

provisions make it clear that the Legislature intended the whole of § 37E to prohibit using a false identity for financial gain.

c. Neighboring sections. Viewing § 37E (b) in the context of statutory provisions that precede it also is illuminating. See Commonwealth v. Levia, 385 Mass. 345, 348 (1982) (discussing import of provision's location in code). General Laws c. 266, §§ 37A, 37B, 37C, and 37D, each criminalize conduct pertaining to credit cards. Section 37A provides definitions relating to the misuse of credit cards. Section 37B criminalizes certain types of that misuse, such as making false statements for the purpose of procuring a credit card. Section 37C prohibits additional types of misuse, such as "obtain[ing] control over a credit card" with intent to defraud. Finally, § 37D bars fraudulent publication of certain credit card information. Given that each of the four provisions that precede § 37E deals with credit card misuse or fraud, it is likely that the Legislature similarly intended that § 37E (b) criminalize use of a false identity in connection with financial gain or to affect the credit of another.

d. Legislative history. Our interpretation of § 37E (b) also is buttressed by supplementary documentation published at the time the statute was enacted. See Commonwealth v. Mogelinski, 466 Mass. 627, 633 (2013), quoting Wright v. Collector & Treas. of Arlington, 422 Mass. 455, 457-458 (1996)

(statutory interpretation must be reasonable and supported by purpose and history of statute).

A March, 1998, memorandum released by the Senate Post Audit and Oversight Committee described § 37E (b) as a way to "crack down on identity fraud, a scam that can cause financial nightmares for its victims."  Senate Post Audit and Oversight Committee, Jacques, Jajug, and Caron Announce That Identity Fraud Legislation Becomes Law Tomorrow at 1 (March 2, 1998). Elaborating on these concerns, the then-chair of the committee, Senator Cheryl A. Jacques, described identity fraud as a crime that "has been occurring for years, destroying hundreds of credit histories and reputations."  Id. at 2.  The memorandum notes that identity fraud often occurs where someone uses another's identity to "gain credit, run up debts, and taint his credit history."  Id.  Further, a memorandum to the then-Governor from the office of legal counsel recommending signing the bill notes that identity fraud often "is used to harass victims of domestic violence (e.g., to obtain goods or services or to disconnect utilities, etc.)."  Memorandum from Office of the Governor's Legal Counsel to Governor Argeo P. Cellucci, House Bill No. 5174, "An Act Relative to False Impersonation and Identity Fraud" at 2 (November 23, 1998).

2. Statutes directly related to providing a false name to police.  Finally, we find additional support for our conclusion

in comparing § 37E (b) to the two statutes that directly prohibit providing a false name to the police.

The first, G. L. c. 90, § 25, enacted in 1906, directly and unambiguously prohibits the exact conduct at issue here, i.e., providing a false name to a police officer while operating a motor vehicle.[7,8]  See St. 1906, c. 412, § 6.  It is unlikely that the Legislature intended also to punish the same conduct indirectly by enacting § 37E (b) decades later.  See Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd., 457 Mass. 663, 673 (2010) ("We presume that the Legislature acts with full knowledge of existing laws").

The second, G. L. c. 268, § 34A, bars providing a false name to a police officer following an arrest.[9]  Significantly, it was enacted at the same time, and in the same bill, as § 37E (b).  St. 1998, c. 397, § 2.  If the Legislature had intended for § 37E (b) to encompass providing a false name to a police

---

[7] The statute provides in pertinent part:  "Any person who, while operating or in charge of a motor vehicle, shall . . . give a false name or address, [to] any police officer . . . shall be punished . . . ."  G. L. c. 90, § 25.

[8] As discussed supra, the defendant was charged with violating this statute; the charge was later dismissed as part of a plea deal.

[9] The statute provides in pertinent part:  "Whoever knowingly and willfully furnishes a false name or Social Security number to a law enforcement officer or law enforcement official following an arrest shall be punished . . . ."  G. L. c. 268, § 34A.

officer, it need not have enacted G. L. c. 268, § 34A.  See Commonwealth v. J.A., 478 Mass. 385, 387 (2017).

Together, the two statutes that directly prohibit providing a false name to a police officer make it unlikely that § 37E (b) is also meant to indirectly prohibit the same conduct.  See J.A., supra.

Conclusion.  The order of the Boston Municipal Court judge denying the defendant's motion to withdraw her plea of guilty is reversed, and the matter is remanded for entry of an order consistent with this opinion.

So ordered.